IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GEOTAG, INC. § | |
| § | |
| PLAINTIFF, § | |
| § | CIVIL ACTION NO. 2:10-cv-00572 |
| v. § | |
| § | |
| STARBUCKS CORP, *et al.*, § | |
| § | JURY TRIAL DEMANDED |
| DEFENDANTS. § | |
| § | |

### GEOTAG, INC.'S RESPONSE TO DEFENDANT
### GODFATHER PIZZA INC'S MOTION TO SEVER AND TRANSFER

Plaintiff GeoTag, Inc. ("GeoTag") files this Response to the Motion to Sever and Transfer filed by Defendant Godfather Pizza, Inc. ("GPI"), ("Motion" - Dkt. No. 381).

**I.     INTRODUCTION**

Defendant GPI seeks a severance of GeoTag's claims against it and then a transfer of the severed action to the District of Nebraska pursuant to 28 U.S.C. § 1404(a).  GeoTag does not oppose the severance of its claims against GPI on the condition that GeoTag's claims against GPI be consolidated for pretrial purposes under Rule 42 of the Federal Rules of Civil Procedure with the other co-pending lawsuits brought by GeoTag in this Court involving the same patent and issues.

GPI's motion to transfer, however, should be denied.  First and foremost, transferring GeoTag's claims against GPI to Nebraska would create the existence of multiple lawsuits in different forums involving the same issues resulting wasteful duplicative litigation causing a waste of the parties' time and money and judicial resources contrary to the interests of justice and judicial economy.  Furthermore, GPI has not identified any specific documents, employees or third party witnesses located in or near the proposed transferee forum, only that a third party generally resides

there. On the other hand, GeoTag has explicitly identified documents and several witnesses by name that are located in the Eastern District of Texas. Thus, GPI has not satisfied its heavy burden of showing that the transferee venue is clearly more convenient than GeoTag's chosen forum.

## II.     BACKGROUND

### A.     Background of the GeoTag Litigation.

GeoTag's patent infringement claims against GPI concern a single patent – U.S. Patent No. 5,930,474 (the "`474 patent") – and is among the patent infringement claims GeoTag has asserted against several hundred defendants in 19 lawsuits pending in this Court (the "GeoTag litigation"). The `474 patent relates generally to the organization of geographical search technology made available through the Internet and its functionality, such as online yellow pages, "store locator" and job locator technology found on many websites and mobile applications.

The GeoTag Texas litigation commenced in July 2010, when GeoTag sued 14 defendants in a case styled *GeoTag, Inc. v. Frontier Communications Corp., et al.*, No. 2:10-cv-00265, and Yellowpages.com LLC in a case styled *GeoTag, Inc. v. Yellowpages.com LLC*, No. 2:10-cv-00272. Since December 2010, GeoTag filed 16 additional lawsuits. GeoTag asserted its claims against GPI in *GeoTag v. Starbucks Corp., et al.*, Case No. 2:10-cv-572.[1] All of the lawsuits comprising the GeoTag litigation have been assigned to this Court since February 23, 2012.

### B.     Plaintiff GeoTag.

GeoTag is a provider of patented online and mobile applications focused around geolocation technology. GeoTag's technology is based on fundamental technology described in the `474 Patent. The patented GeoTag technology is a spatial information management technology that makes

---

[1] In March 2011, GeoTag filed a lawsuit against a vendor of store locator technology – Where 2 Get It, Inc. – after Where2GetIt filed a declaratory judgment action in Delaware while engaged in settlement discussions with GeoTag. The Delaware court subsequently transferred the Where2GetIt declaratory judgment action to this Court.

possible a wide range of location enabled online and mobile applications. GeoTag location based technology is used in web and mobile applications such as yellow pages, classifieds, search and advertising, dating sites, career locators, product locators, store locators, dealer locators, job search sites, dating search sites, event locators, daily deals and coupons, in store availability, in store pick-up and other applications. GeoTag offers companies providing these online and mobile applications the opportunity to license the GeoTag technology. Ex. 1 - Declaration of John Veenstra at ¶ 3 ("Veenstra Declaration").

GeoTag is the owner of the '474 Patent. GeoTag is incorporated under the laws of the State of Texas with its headquarters and principal place of business located at 2591 Dallas Parkway, Suite 505, Frisco, Texas, which is located in the Eastern District of Texas. Veenstra Declaration at ¶ 4. GeoTag and its predecessors involved in the licensing and enforcement of the `474 patent have been located in the Eastern District of Texas since 2007. Veenstra Declaration at ¶ 5.

GeoTag's executive management consists of John Veenstra as Chief Executive Officer and Lawrence P. Howorth as President and Chief Financial Officer. Mr. Veenstra has resided in Plano, Texas located in the Eastern District of Texas since 2007. Mr. Howorth resides in Plano, Texas, located within the Eastern District of Texas. Veenstra Declaration at ¶ 6. Both Mr. Veenstra and Mr. Howorth are expected to testify at trial. Ex. 2 – Declaration of Stevenson Moore at ¶4 ("Moore Declaration").

Substantially all of GeoTag's business activities, including meetings of GeoTag's Board of Directors, take place in the Eastern District of Texas. Veenstra Declaration at ¶ 7. GeoTag contracts with support services primarily in Texas rather than hiring full time employees depending on the particular requirements. Veenstra Declaration at ¶ 8. GeoTag has employed and continues to employ several independent contractors in connection with its business. GeoTag currently employs

at least five full time independent contractors at GeoTag's Frisco, Texas headquarters. At certain times, depending on workload, GeoTag has employed from six to 12 full time independent contractors at its headquarters in the Frisco, Texas. Veenstra Declaration at ¶ 8.

GeoTag has hundreds of thousands of pages of physical and electronic documents relating to the '474 patent located at its Frisco, Texas headquarters (and the Dallas, Texas office of its counsel). These documents include documents relating to the conception, reduction to practice, patent prosecution, licensing and enforcement of the '474 patent. Veenstra Declaration at ¶ 9.

GeoTag and its predecessors have developed and marketed a fully functioning yellow pages website called Zland Yellow Pages, which is currently operated from GeoTag's headquarters in Frisco, Texas, and employs the technology covered by the '474 patent. ZLAND Yellow Pages provides directory listing services and advertising to Texas businesses, organizations, local governments, community event organizers, churches, schools and universities. While GeoTag operates on a multiple server platform, GeoTag's primary server is located in Dallas, TX. Veenstra Declaration at ¶ 10.

### C. Defendant GPI.

Defendant GPI is a Delaware corporation with its headquarters located at 2808 North 108th Street, Omaha, Nebraska. *See* Moore Declaration, Ex. A. GPI does business through 600 stores and franchise stores nationwide, including 11 stores in Texas and one in the Eastern District of Texas. *See* Motion at 2, fn 1; *see also* Roberts Declaration, Dkt. No. 381-1 at ¶5; *see also* Moore Declaration, Ex. B at 37.

### III. ARGUMENT

### A. Misjoinder

GPI asserts that it has been misjoined in the instant action under Rule 20 of the Federal Rules of Procedure based upon the recent decision by the Federal Circuit in *In re EMC Corp.*, 677 F.3d 1351, 1357 (Fed. Cir. 2012).

In view of the Federal Circuit's decision in *In re EMC,* 677 F.3d 1351 (Fed Cir. 2012), GeoTag agrees that severance of the claims against GPI in this action is proper where the Defendants are "not acting in concert" and there are no "overlapping facts that give rise to each cause of action." *Id.* at 1359. GeoTag believes that, with respect to at least some of the Defendants in these actions, some of these facts may exist and joinder of these defendants would be appropriate. Furthermore, discovery in this case will likely reveal these facts establishing that joinder of some or all of the Defendants in these actions was appropriate.

Nevertheless, GeoTag has determined that it not necessary to force the Court to determine whether GeoTag's joinder of GPI in this lawsuit was appropriate in order to resolve the procedural issue presented by the GPI. Instead, GeoTag believes that the most prudent and procedurally proper course for the Court to take is to "deem severed"[2] at this time GeoTag's claims against GPI and then simultaneously consolidate the action against GPI with all of the other GeoTag actions pending before this Court for pre-trial purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Rule 42(a) further provides that, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the action; (2) consolidate the actions; or (3) issue any orders to avoid unnecessary cost or delay." The Court can determine whether to consolidate any of these severed actions for trial at a later date based

---

[2] GeoTag uses the term "deem severed" to reflect that the Court should avoid the needless administrative headache of creating separate action numbers for each of the Defendants if GeoTag's claims against these Moving Defendants and their counterclaims against GeoTag are to be consolidated for pretrial purposes.

upon a more complete record enabling the Court to assess the fairness and efficiencies of a consolidated trial involving two or more Defendants.

The Federal Circuit in *EMC* endorsed this approach when it observed that:

> In exercising its discretion, the district court should keep in mind that even if joinder is not permitted under Rule 20, the <u>district court has considerable discretion to consolidate cases for discovery and for trial under Rule 42 where venue is proper and there is only "a common question of law or fact</u>." FED. R. CIV. P. 42(a); *see* 9A Wright et al., *supra*, § 2382 ("[T]he existence of a common question by itself is enough to permit consolidation under Rule 42(a), even if the claims arise out of independent transactions."). <u>Common pretrial issues of claim construction and patent invalidity may also be adjudicated together</u> through the multidistrict litigation procedures of 28 U.S.C. § 1407. (citations omitted).

*EMC,* 677 F.3d at 1360 (emphasis added). Eastern District of Texas Local Rule CV-42(b) similarly provides: "[w]hen two or more actions are pending before a judge which involve . . . a common question of law or fact . . . that judge may order that all or part of the actions be consolidated."

The Fifth Circuit encourages consolidation of cases involving common questions of law or fact "to expedite trial and eliminate unnecessary repetition and confusion." *Miller v. U.S. Postal Serv.,* 729 F.2d 1033, 1036 (5th Cir. 1984). "Trial judges are urged to make good use of Rule 42(a)…where there is involved a common question of fact and law as to the liability of the defendant in order to expedite the trial and eliminate unnecessary repetition and confusion . . . ." *Dupont v. Southern Pacific Co.,* 366 F.2d 193, 195 (5th Cir. 1966). The Eastern District has granted, and the Fifth Circuit has upheld, consolidation on the basis of these and similar factors. *See, e.g., Allergan, Inc. v. Sandoz, Inc.* 2011 U.S. Dist. LEXIS 45577 at *8 (E.D. Tex., April 27, 2011); *In re Universal Access, Inc.,* 2002 U.S. Dist. LEXIS 19872 at **8-10 (E.D. Tex., August 23, 2002) (granting consolidation at least in part because there were common issues of law and fact and the motion was unopposed); *Miller, supra* at 1037 (remanding for consolidation "[i]n the interests of equity and judicial economy"). Moreover, the Eastern District often grants consolidation in patent cases where,

as here, the parties among the various actions are the same, the patents cover similar subject matter, and/or the same products are accused of infringement. *See, e.g., Allergan, supra* at *8; *Mediostream, Inc. v. Microsoft Corp.,* 2009 U.S. Dist. LEXIS 90952 at *11 (E.D. Tex., Sept. 30, 2009).

Other courts also have recently followed the same procedure proposed by GeoTag. In *InvestPic, LLC v. SAS Institute, Inc.*, Civil Action No. 10-1028 (D. Del. May 15, 2012), for example, the court granted a defendant's motion to sever in view of the *EMC* decision, but consolidated that severed action with the action from which it was severed, explaining that:

> In view of the fact that the case against SAS has been severed, but obviously has various common questions of law and fact with the case against the other fourteen defendants, I will consolidate it for all purposes, other than having a joint trial, with the case against the rest of the defendants, without prejudice to the defendant seeking relief from this order for any appropriate reason.

*Id*. at 11-12. Similarly, in *Interval Licensing LLC v. AOL, Inc., et al.*, Civil Action No. C10-1385 (W.D. Wash. Apr. 29, 2011), the court also granted the eleven defendants' motion to sever based upon misjoinder (finding dismissal an improper remedy), but simultaneously consolidated the eleven actions for all pretrial proceedings and for trial pursuant to Rule 42(a). *Id*. at 4.

GPI cannot credibly argue that consolidation of the claims against them and the other Defendants sued in this lawsuit is improper. The GeoTag litigation has efficiently proceeded on a consolidated basis since its commencement in July 2010. Thus, GPI's request for severance should be granted, but the severed action against it should be simultaneously consolidated with GeoTag's claims against the other Defendants in this lawsuit for pretrial purposes. Although GPI asserts that following this procedure "would impose the same burden on GPI –'the prejudice and potential confusion of being forced to defend claims alongside unrelated parties with different products or services and possibly different strategies' –that the Federal Circuit has wanted district courts to avoid," Dkt. No. 381 at 11, GeoTag is not proposing that the Court ignore GPI's motion to transfer

in the process of severing and simultaneously consolidating GeoTag's claims against GPI. As set forth below, GPI has failed to satisfy its burden to establish that transfer of GeoTag's claims against GPI from this forum to the District of Nebraska. Thus, the Court should deny GPI's motion to transfer and then sever and simultaneously consolidate GeoTag's claims against GPI with GeoTag's claims against other defendants in the GeoTag litigation.

### B. Motion to Transfer

GPI further contends that, if severed, the claims against GPI should be severed and transferred to the District of Nebraska.

#### 1. *Legal Standard*

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).

Although the plaintiff's choice of forum is not a factor in the convenience analysis, it contributes to the defendant's burden of showing that the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 314-15. The plaintiff's choice of venue should rarely be disturbed unless the balance of convenience factors is strongly in favor of the defendants. *Volkswagen II,* 545 F.3d at 315; *Gulf Oil v. Gilbert* 330 U.S. 507 (1947); *see also In re Affymetrix,*

*Inc.*, Misc. No. 913, 2010 WL 1525010, at *1 (Fed. Cir. April 13, 2010) (citing *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64) ("[F]or transfer of venue to be appropriate, [defendant] must make a clear and indisputable showing that on balance, the convenience and interest of justice considerations strongly favor transfer."). Therefore, transfer is not appropriate unless the movant demonstrates good cause by showing that the transferee venue is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 315; *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012).

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

2.  *Whether the Lawsuit Could be Brought in the Transferee Venue*

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. GeoTag does not dispute that its claims against GPI could have been brought in the District of Nebraska. However, GPI's assertions that GeoTag's "choice of forum should be afforded little weight," is based on a misreading of the case law. GPI points to *Greiner v. American Motor*

*Sales Corp.*, as standing for such. Dkt. No. 381 at 6. In fact, in *Greiner*, "[a]ll witnesses, evidence and the locus of operative facts are situated in the [transferee district]." *Greiner v. American Motor Sales Corp.*, 645 F. Supp. 277, 279-80 (E.D. Tex. 1986). As shown below, that is clearly not the case here as relevant witnesses and documents of GeoTag are located in the Eastern District of Texas.

    3.  *Private Interest Factors*

      a.  <u>The Relative Ease of Access to Sources of Proof</u>

    The court must consider the physical location and volume of documents possessed by each party in relation to the transferee and transferor venues. *See Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d at 1345.

    Although GPI has asserted that its offices are located in the proposed transferee forum – the District of Nebraska – it has not submitted any evidence that any appreciable number of documents are actually located at those offices. GPI merely asserts that "the primary sources of proof are the data, records, and source code that relate to the website, and knowledge of individuals concerning its operations" and that "all of this evidence is located in Omaha at GPI's headquarters and the offices

of third-party Web Solutions Omaha." Dkt. No. 381 at 8. In the deposition of Mr. Roberts, he admits that a copy of the source code, the primary evidence for infringement, is stored at GPI's headquarters. *See* Moore Declaration, Ex. B at 34-35. This is almost certainly stored in an electronic format, which is easily transported to whatever district the case may be pending. Additionally, other than Mr. Roberts, no other specific witnesses residing in Nebraska were identified.

GeoTag, however, has shown that it has over a hundred thousand of pages of physical and electronic documents located at its headquarters in the Eastern District of Texas. Veenstra Declaration at ¶ 9. GPI is mistaken in its argument that "GeoTag's connections to the Eastern District are weak." Motion at 6. As pointed out above, GeoTag is incorporated under the laws of the State of Texas with its headquarters and principal place of business located in the Eastern District of Texas. Veenstra Declaration at ¶ 4. GeoTag and its predecessors involved in the licensing and enforcement of the '474 patent have been located in the Eastern District of Texas since 2007. Veenstra Declaration at ¶ 5. The members of GeoTag's executive management reside in the Eastern District of Texas. John Veenstra, the CEO of GeoTag and lead inventor of the '474 Patent has resided in the Eastern District of Texas since 2007. Veenstra Declaration at ¶ 6. GeoTag has employed and continues to employ several independent contractors in connection with its business at its Frisco, Texas headquarters.

GeoTag's connections to Texas and the Eastern District must be considered. *Azure Networks, LLC v. CSR, PLC*, Civil Action No. 6:11cv139 LED-JDL at 11 (E.D. Tex. June 25, 2012). "Weight given to the location of the plaintiffs' documents is determined by whether the plaintiffs are an ephemeral entity." *Stragent LLC v. Audi AG*, No. 6:10-cv-227, 2011 WL 2912907 at *6 (E.D. Tex. July 18, 2011) (quoting *NovelPoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229,

2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010)). GeoTag's substantial connections with the Eastern District of Texas for over five years demonstrates that its presence in this forum is not ephemeral. *See Azure*, *supra*, at 11. Therefore, the location of GeoTag's relevant documents, which are all in the Eastern District of Texas, should be given weight in the transfer analysis. *See In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011) (taking into account non-ephemeral entity's documents and ties to the forum).

Thus, even looking at GPI's evidence in the most favorable light, this factor weighs against transfer.

        b.       <u>The Availability of Compulsory Process to Secure the Attendance of Witnesses Relative Ease of Access to Sources of Proof</u>

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. Importantly, the defendant bears the burden of identifying unwilling third party witnesses that would benefit from the transfer. *Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34, slip op. at 5 (E.D. Tex. Apr. 19, 2012); *see also Texas Data Co., LLC v. Target Brands, Inc.,* 771 F. Supp. 2d 630, 643 (E.D. Tex. 2011); *NovelPoint*, 2010 WL 5068146, at*6 (E.D. Tex. Dec. 6, 2010) (noting that the Court will not base its conclusion on unidentified witnesses); *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011) (same).

GPI has not identified any third party witnesses who would benefit from transfer of this case to Nebraska. All GPI offers is that "[t]he firms that designed and maintain GPI's website are located in Omaha, Nebraska." Dkt. No. 381 at 9. Even in its deposition, GPI only generally refers to

Midland Computer and Mid Comp d/b/a Web Solutions but does not identify any specific third-party individuals. Moore Declaration, Ex. B at 27-28.

Other than Mr. Roberts, GPI has not identified any party witness with knowledge., only that all of its "employees who have knowledge concerning the functionality of the store locator…are employed GTI's corporate headquarters." Roberts Declaration at ¶. However, party witnesses are not taken into account when discussing the availability of compulsory process. *Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, No. 2:10cv109, 2011 U.S. Dist. LEXIS 15408, at *9 (E.D. Tex. Jan. 12, 2011) ("[C]urrent employees have an employment relationship with a party and should be considered party witnesses."). Therefore, the availability or unavailability of compulsory process as to these unidentified GPI employees need not be considered.

Other defendants in the GeoTag litigation have asserted that there possible third party witnesses knowledgeable about prior art reside in the Dallas area, immediately adjacent to the Eastern District of Texas. *See* Case No. 2:10-cv-570, Dkt. No. 444 at 5. Although these witnesses do not reside in the Eastern District of Texas within this Court's absolute subpoena power, this Court may nevertheless compel these witnesses to testify in this forum pursuant to FED. R. CIV. P. 45(c)(3)(C). *See Transdata, Inc. v. Tri-County Cooperative, Inc.*, Civil Action No 6:11cv46 LED-JDL at 6 (E.D. Tex. Aug. 11, 2011); *i2 Technologies, Inc. v. Oracle Corporation*, Civil Action No. 6:09 CV 194 at 5 (E.D. Tex. August 17, 2010).

Thus, because GPI has failed to identify any third party witnesses located in the proposed transferee forum and there are third party witnesses, such as GeoTag's contractors with relevant knowledge located in the Eastern District of Texas, within the subpoena power of this Court, this factor weighs against transfer or, at most, is neutral.

    c.  <u>The Cost of Attendance for Willing Witnesses</u>

All parties and witnesses must be considered in the analysis of this factor. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal citations omitted). Additionally, the convenience of non-party witnesses is given greater weight than that of party witnesses. *Stragent*, 2011 WL 2912907, at *7; *NovelPoint*, 2010 WL 5068146, at *6; *see also BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009).

As discussed above, GPI has failed to identify any specific witnesses located in Omaha for whom it would be clearly more convenient if this case were transferred to that venue, and has not suggested that Mr. Roberts would be required for trial. GPI merely mentions unidentified employees who live in Omaha. Dkt. No. 381 at 2. GPI does not identify a single employee with relevant knowledge. As this Court declared in *Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012), "the Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *Id*. at 13. *See also NovelPoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); s*ee also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011). GeoTag has identified three of its employees or independent contractors who reside in this forum who will be witnesses. *See* Moore Declaration at ¶ 4. In addition, as discussed above, other defendants in the

GeoTag litigation have asserted that there are at least two third party witnesses knowledgeable about asserted prior art who live in the Eastern District of Texas. It would be more convenient for these witnesses if this case is not transferred.

Thus, this factor weighs against transfer.

####  d.     Other Practical Problems

The goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). As a result, in appropriate circumstances, courts have analyzed the goal of preventing unnecessary inconvenience and expense under the rubric of "judicial economy." Furthermore, "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010) (citing *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960))(additional citation omitted); *see also* 28 U.S.C. §1404(a) ("For the convenience of the parties and witnesses, in the interest of justice . . . )(emphasis added). Thus, although judicial economy is not among the list of enumerated *Gilbert* factors, it is "a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice . . . [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL585*, 364 U.S. 19, 26, 80 S. Ct. 1470, 4 L.Ed.2d 1540 (1960). Although patent infringement cases "may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and

resources." *Volkswagen*, 566 F.3d at 1351.

Transfer of GeoTag's claims against GPI to Nebraska would not promote judicial economy in this case. Only GPI and five other defendants among the hundreds of defendants in the GeoTag litigation have sought transfer of GeoTag's claims against them to another forum, and each of these defendants seek transfer to different forums. Therefore, transferring GeoTag's claims against GPI and the other defendants who have filed transfer of venue motions would splinter this litigation into at least six separate actions pending in six separate forums, leaving hundreds of defendants in the litigation pending in this forum. Each of these separate actions will involve similar issues of claim validity, claim construction, claim scope, discovery, evidence, proceedings, and trial. Transferring GeoTag's claims against GPI would create duplicative, parallel proceedings on the same patent, unnecessarily wasting judicial resources and raising the specter of inconsistent adjudication. In short, transfer would squarely contradict the goals of §1404(a). *See Van Dusen,* 376 U.S. at 616 (opining that the goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense"). Thus, especially in view of the weak showing of private factors favoring transfer, this is a situation where judicial economy is a "paramount consideration in determining whether transfer is in the interest of justice." *Volkswagen II*, 565 F.3d at 1351. GPI completely ignores this factor. Transfer should be denied for this reason alone. This Court has denied motions to transfer on this ground in several cases with even less compelling circumstances than the GeoTag litigation. *See Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012); *Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment, LLC*, Civil Action No. 6:10-CV-607 LED-JDL (May 25, 2012).

    4.    *Public Interest Factors*

GPI's argument that the local interest factor favors transfer is without merit.  Although GPI's headquarters is located in Omaha, Nebraskam it seeks the legal benefits of the state of Delaware.  On the other hand, GeoTag is incorporated in Texas and has its headquarters located in the Eastern District of Texas and a substantial presence in this forum.  Thus, citizens of the Eastern District of Texas have an interest in adjudicating this dispute, as do the citizens of Omaha.  This factor is neutral.  *Azure Networks, LLC v. CSR, PLC*, Civil Action No. 6:11cv139 LED-JDL at 15-16 (E.D. Tex. June 25, 2012).

## CONCLUSION

The Court should sever GeoTag's claims against GPI and simultaneously consolidate these claims against GPI with the other GeoTag litigation pending before this Court for pretrial purposes.  The Court should also deny GPI's motion to transfer in the interests of justice and to promote judicial economy.

Dated:  July 30, 2012

Respectfully submitted,

**NI LAW FIRM, PLLC**

By: */s/ Hao Ni*
Hao Ni
State Bar No. 24047205
hni@nilawfirm.com

3102 Maple Avenue
Suite 400
Dallas, Texas  75201
Telephone:   (214) 800-2208
Facsimile:     (214) 800-2209

**BUETHER JOE & CARPENTER, LLC**

Eric W. Buether
State Bar No. 03316880
Eric.Buether@BJCIPLaw.com
Christopher M. Joe

    State Bar No. 00787770
Chris.Joe@BJCIPLaw.com
Brian A. Carpenter
State Bar No. 03840600
Brian.Carpenter@BJCIPLaw.com
Monica Tavakoli
State Bar No. 24065822
Monica.Tavakoli@BJCIPLaw.com
Mark D. Perantie
State Bar No. 24053647
Mark.Perantie@BJCIPLaw.com
Niky Bukovcan
State Bar No. 39403
Niky.Bukovcan@BJCIPLaw.com

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:   (214) 466-1272
Facsimile:   (214) 635-1828

**ATTORNEYS FOR PLAINTIFF GEOTAG, INC.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 30th day of July, 2012. Any other counsel of record will be served by facsimile transmission.

*/s/ Hao Ni*
Hao Ni