Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **GEOTAG, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No. 2:10-cv-00572** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **STARBUCKS CORP.,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## DECLARATION OF STEVENSON MOORE

I, Stevenson Moore, declare as follows:

1.      I am a member of the law firm of the Ni Law Firm, PLLC ("Ni Law") and one of the attorneys representing GeoTag, Inc., in this and other matters.  I have personal knowledge of the facts set forth in this Declaration. I am competent to testify as to all matters stated, and I am not under any legal disability that would in any way preclude me from testifying.

2.      Attached as Exhibit A is a printout from the Nebraska Secretary of State for Godfather's Pizza, Inc.

3.      Attached as Exhibit B is a true and correct copy of the rough draft of the July 16, 2012 deposition transcript of Steven Roberts.

4.      Plaintiff GeoTag expects to call at least the following persons to testify at the trial of its claims against Godfather's Pizza, Inc.:  John Veenstra; Elizabeth Morgan; and Lawrence Howorth.  All of these persons reside in the Eastern District of Texas.

I declare under penalty of perjury that the foregoing is true and correct and that I have signed this declaration in Dallas, Texas on July 20, 2012.


*/s/ Stevenson Moore*
Stevenson Moore

Exhibit A

# Nebraska Secretary of State

**- John A. Gale**

# Business Services

Home » Corporation and Business Entity Searches

`Mon Jul 30 19:44:30 2012`

For Letters of Good Standing ($6.50), Certificates of Good Standing ($10.00), and/or images ($0.45 per page) of documents filed with the Secretary of State please click the corresponding service below:



Back to Search Results

**Pay Services:**
Online Images of Filed Documents | Good Standing Documents

| Entity Name | SOS Account Number |
|---|---|
| GODFATHER'S PIZZA, INC. | 0886165 |

| **Principal Office Address** | **Registered Agent and Office Address** |
|---|---|
| 2808 N. 108TH ST.<br>OMAHA, NE 68164 | CSC-LAWYERS INCORPORATING SERVICE COMPANY<br>SUITE 1900<br>233 SOUTH 13TH STREET<br>LINCOLN, NE 685080000 |

| Nature of Business | Entity Type | Date Filed | Account Status |
|---|---|---|---|
| PIZZA RESTAURANTS | Foreign Corp<br>Qualifying State: DE | Feb 13 1987 | Active |

| Corporation Position | Name | Address |
|---|---|---|
| **President** | RONALD B GARTLAN | 2808 N. 108TH ST<br>OMAHA, NE 68164 |
| **Secretary** | KATHLEEN M JOHNSON | 2808 N. 108TH ST<br>OMAHA, NE 68164 |
| **Treasurer** | STEVE ROBERTS | 2808 N. 108TH ST<br>OMAHA, NE 68164 |

**Pay Services:**
**To add an item to your shopping cart, please check the check box and click "Add Items to Cart" button at the bottom of the page.**

**- Images of Filed Documents**

If a check box is visible, the document may be retrieved online, otherwise you must contact the Secretary of State's office to obtain a copy of the document.

| | Code | Trans | Date | Price |
|---|---|---|---|---|
| ☐ | FA | Foreign Authority | Feb 13 1987 | $0.90 = 2 page (s) @ $0.45 per page |
| | MI | Merge In | Sep 13 1988 | |
| | PP | Proof of Publication | Oct 11 1988 | |
| | AO | Change of Agent or Office | Dec 12 1996 | |
| ☐ | TR | Tax Return | Apr 12 1999 | $0.90 = 2 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Apr 20 2000 | $0.90 = 2 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Apr 03 2001 | $0.45 = 1 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Apr 22 2002 | $0.45 = 1 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Mar 03 2003 | $0.45 = 1 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Feb 27 2004 | $0.90 = 2 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Mar 02 2006 | $0.45 = 1 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Mar 06 2008 | $0.90 = 2 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Mar 03 2010 | $0.45 = 1 page (s) @ $0.45 per page |
| ☐ | TR | Tax Return | Apr 05 2012 | $0.45 = 1 page (s) @ $0.45 per page |

**- Letter of Good Standing**

☐   I want to order an online/electronic Letter of Good Standing for the
Corporation which is immediately available for viewing or printing from my
desktop.

$6.50

**- Certificate of Good Standing**

☐  I want to order a Certificate of Good Standing for the Corporation which
contains the State Seal and signature of the Secretary of State. The certificates
are mailed from the Secretary of State's office within 2-3 business days.

$10.00

Click Here to view FAQ for explanation for requesting a Letter of Good Standing
available online or Certificate of Good Standing available from Secretary of
State's office.

Select All | Select None

ADD TO CART

Back to Top

**For Help/Information about Images, please view the FAQ. Thank you!**

**If you cannot find the entity you are looking for, contact the Business Division at (402) 471-
4079.**
**For technical difficulties/assistance please call Nebraska.gov: 1-800-747-8177**

Exhibit B

1

```
 1            IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF TEXAS
 2                    MARSHALL DIVISION

 3
      GEOTAG, INC.,                    )  Case No.
 4                                     )
           v.                          )  2:10-CV-572-
 5                                     )  MHS
      STARBUCKS CORP., et al.          )
 6                                     )

 7                       ROUGH DRAFT

 8    APPEARANCES:

 9    Mr. Hao Ni                   For Plaintiff
      Attorney at Law
10    NI LAW FIRM, PLLC
      3102 Maple Avenue
11    Suite 400
      Dallas, TX 75201
12
      Mr. Andre Barry          For Defendant
13    Attorney at Law          Godfather's Pizza, Inc.
      CLINE WILLIAMS
14    233 South 13th Street
      1900 U.S. Bank Building
15    Lincoln, NE 68508

16    Also Present:  Rebekah Mangrum

17

18

19            DEPOSITION OF STEVEN M. ROBERTS taken

20    at 9:48 a.m. on July 16, 2012, by Caroline L.

21    Miller, RPR, NE CCR, IA CSR, and General Notary

22    Public in and for the State of Nebraska, taken at

23    1125 South 103rd Street, Suite 600, Omaha,

24    Nebraska.

25
```

2

```
 1                    E X A M I N A T I O N

 2    By Mr. Ni:

 3            DIRECT...........^
              REDIRECT.........^
 4
      By Mr. Barry:
 5
              CROSS............^
 6            RECROSS..........^

 7

 8                E X H I B I T   I N D E X

 9
      Ex.  Pg. Ref.
10    No.  No.             Description

11    1    ^          GeoTag, Inc.'s First Rule
                      30(B)(6) Deposition Notice to
12                    Godfather's Pizza, Inc.

13    2    ^          Declaration of Steven M.
                      Roberts
14
      3    ^          July 10, 2012, letter from
15                    Barry to Buether

16    4    ^          Godfather's Pizza, Inc.,
                      Amended Exhibit Accused
17                    Instrumentality: Godfathers

18    5    ^          Website Development and
                      Services Agreement
19

20

21

22

23

24

25
```

```
ROUGH DRAFT                                        3
```

```
1              Taken pursuant to the Federal Rules

2      of Civil Procedure.

3              (Deposition Exhibit 1 was marked for

4      identification.)

5                      STEVEN M. ROBERTS

6              Of lawful age, being first
               duly cautioned and solemnly
7              sworn as hereinafter certified,
               was examined and testified as
8              follows:

9                      DIRECT EXAMINATION

10             MR. NI:  Hao Ni for the plaintiff,

11     GeoTag, Inc.

12             MR. BARRY:  Andy Barry for the

13     defendant Godfather's Pizza, Inc.

14     BY MR. NI:

15        Q.   Good morning, Mr. Roberts.

16        A.   Good morning.

17        Q.   Could you state your full name for

18     the record, please?

19        A.   Steven Michael Roberts.

20        Q.   And do you live here in Nebraska?

21        A.   Yes.

22        Q.   And in what city?

23        A.   Omaha.

24        Q.   Have you ever been deposed before?

25        A.   Yes.
```

ROUGH DRAFT                                          4

```
 1          Q.    What were you deposed for?

 2          A.    It was a personal insurance for my

 3     wife's -- she had a -- tagged a bumper.

 4          Q.    So you understand that you're under

 5     oath today and are required to answer my

 6     questions truthfully?

 7          A.    Yes.

 8          Q.    And is there any reason you would not

 9     able to answer any of my questions truthfully

10     today?

11          A.    No.

12          Q.    And in preparing for this deposition,

13     did you meet with anyone other than your counsel

14     here today?

15          A.    I met with Curtis Stalnaker, who is

16     our director of IT.

17          Q.    Could you spell that for the record?

18          A.    That's a trick.  S-T-A-L-N-A-K-E-R,

19     is the last name.

20          Q.    And did you review any documents in

21     preparation for this deposition?

22          A.    Yes.

23          Q.    And do you recall what documents you

24     reviewed?

25          A.    This document, I think, yes.
```

ROUGH DRAFT                                             5

1              MR. BARRY:  He's referring to

2    Exhibit 1.

3              THE WITNESS:  Yes.

4         Q.   Right.  Just for the record,

5    Exhibit 1 is the GeoTag's First 30(b)(6)

6    Deposition Notice to Godfather's Pizza.

7         And other than Exhibit 1, did you review any

8    other documents?

9         A.   I reviewed my Declaration.

10        Q.   Okay.

11             MR. NI:  Go ahead and marked the

12   Declaration of Steven Roberts as Exhibit 2.

13          Do you need a copy?

14             MR. BARRY:  I have a copy.

15             MR. NI:  Okay.

16             (Deposition Exhibit 2 was marked for

17   identification.)

18             MR. BARRY:  Actually, if you can

19   give me a copy, then I can keep it separate for

20   exhibits -- or keep it with my set of exhibits.

21          Thank you.

22   BY MR. NI:

23        Q.   Mr. Roberts, who do you currently

24   work for?

25        A.   Godfather's Pizza, Inc.

ROUGH DRAFT                                    6

 1        Q.    And so if I use the term Godfather's
 2    today, would you understand that to mean
 3    Godfather's Pizza Inc.?
 4        A.    Yes.
 5        Q.    And could you describe for me what
 6    your position is at Godfather's?
 7        A.    I am the vice-president and chief
 8    financial officer.
 9        Q.    And how long have you held that
10    position at Godfather's?
11        A.    Five years.
12        Q.    When did you first join Godfather's?
13        A.    June 18th, 2007.
14        Q.    So have you held that position since
15    you joined Godfather's?
16        A.    Yes.
17        Q.    What's your educational background?
18        A.    I have a degree from the University
19    of Nebraska at Lincoln, and -- that's my only
20    education, other than high school.
21        Q.    Sorry.  And what was what was your
22    degree in?
23        A.    Accounting.
24        Q.    So, Mr. Roberts, when did you first
25    hear about this case?

ROUGH DRAFT                                              7

1          A.   Oh, when I received notice, I guess.

2     Is that two years ago?

3          Q.   And are you aware that this is a

4     patent infringement case?

5          A.   Yes.

6          Q.   And have you looked at the patent

7     that's at issue in this case?

8          A.   No.

9          Q.   So have you studied any of the

10    technical issues that are at issue in this case

11    related to the patent?

12         A.   No.

13              MR. BARRY:  And I'm going to

14    interpose an objection here.  These are questions

15    outside the scope of the deposition.  So I -- if

16    these are questions just for personal background

17    of Mr. Roberts that's fine, but he's not speaking

18    for the corporation when you ask him about

19    reviewing the patent and studying the patent and

20    studying the technical issues.  That's outside

21    the scope of the deposition.

22              MR. NI:  That's fine.  This is just

23    kind of getting an understanding of the

24    background.

25              MR. BARRY:  Okay.  Just so we're

ROUGH DRAFT                                                8

1   clear.

2        Q.   And, Mr. Roberts, do you understand

3   what's being accused of infringement in this

4   case?

5        A.   Yes.

6        Q.   And what's your understanding of

7   what's being accused here?

8             MR. BARRY:  And, again, this is

9   outside the scope of the deposition notice, but

10  you can answer based on your personal knowledge,

11  Mr. Roberts.

12            MR. NI:  Well, I mean the reason

13  it's within the scope is because if it's

14  documents related to, you know, the accused

15  systems and everything, that's why his

16  understanding is relevant.

17            MR. BARRY:  Well, in that case --

18  let me mark Exhibit 3.  Give me an exhibit

19  sticker, please.

20            (An off-the-record discussion was

21  held.)

22            (Deposition Exhibits 3 and 4 were

23  marked for identification.)

24            MR. BARRY:  I've marked Exhibit 3,

25  which is my letter to Eric Buether dated July 10,

ROUGH DRAFT                                              9

1    2012, which sets forth various objections of

2    Godfather's Pizza, Inc., to the Rule 30(b)(6)

3    deposition that's been marked Exhibit 1.

4            And also Exhibit 4, which is the amended

5    infringement contentions of GeoTag, Inc., with

6    respect to Godfather's Pizza, Inc., which

7    describes the accused instrumentality at

8    www.godfathers.com store locater.

9            And I think those exhibits establish

10   what -- and in particular Exhibit 4 establishes

11   what the accused instrumentality is.

12           You can ask Mr. Roberts what his

13   understanding is, but the definition of the

14   accused instrumentality is defined by the

15   pleadings and the discovery in this case, and in

16   particular at this point the infringement

17   contentions of GeoTag.

18               MR. NI:  Right.

19       Q.   So, Mr. Roberts, have you reviewed

20   the document marked as Exhibit 4 before?

21       A.   No.

22       Q.   Okay.  So are you familiar with the

23   Godfather's website?

24       A.   Yes.

25       Q.   And is there a group at Godfather's

ROUGH DRAFT                                    10

1    responsible for maintaining the website?

2        A.   I don't understand that question,

3    maintain?

4        Q.   Is there a group at Godfather's

5    responsible for the maintenance of the website in

6    case there's a failure with the website or

7    anything?

8        A.   No.

9        Q.   Is there a group at Godfather's

10   responsible for updating the content of the

11   website?

12       A.   Yes.

13       Q.   Is there a name for this group?

14       A.   Be our IT department.

15       Q.   And is this -- sorry, strike that.

16       And what individuals are in your IT

17   department?

18       A.   Curtis Stalnaker is the director.

19   David is the manager -- supervisor level, and

20   Brian is staff, and then Bill is staff.

21       Q.   And do you know what type of content

22   they're responsible for updating on the

23   Godfather's website?

24       A.   No.

25       Q.   Other than updating the content of

ROUGH DRAFT                                           11

1    the Godfather's website, does the IT department

2    perform any other maintenance in regards to the

3    Godfather's website?

4         A.   No.

5         Q.   Do you know how they go about

6    updating the content on the Godfather's website?

7         A.   No.

8         Q.   And are you familiar with the store

9    locater on the Godfather's website?

10        A.   Yes.

11        Q.   Do you know how it operates?

12        A.   No.

13        Q.   So do you know if there's a database

14   used for a store locater?

15        A.   I do not, no.

16        Q.   Do you know who at Godfather's would

17   know how the store locater operates?

18        A.   I would -- no.

19        Q.   So let's go back --

20             MR. BARRY:  And, again, these

21   questions are outside the scope of the

22   Rule 30(b)(6) notice.  So to the extent you're

23   asking background for Mr. Roberts personally,

24   that's fine, but they go outside the scope of the

25   notice.

ROUGH DRAFT                                              12

```
 1          Q.   Mr. Roberts, let's turn to Exhibit 1.
 2    The -- and go through the various topics on
 3    page 4 of Exhibit 1.
 4          A.   (Witness complied.)
 5          Q.   And topic 1 is:  The geographic
 6    location of your Documents, ESI, source code,
 7    servers, facilities, buildings, personnel and
 8    other things related to the design, development,
 9    making, implementation, using, testing,
10    maintaining, supporting and offering the Accused
11    Instrumentalities, including the geographic
12    location of all sources of proof related to the
13    Accused Instrumentalities.
14         Is it your understanding that you've been
15    designated by Godfather's to testify to its
16    knowledge of this topic?
17          A.   Yes.
18          Q.   And what's your basis for your
19    knowledge of this topic?
20          A.   Just my position at the company.
21          Q.   And so earlier I asked you which
22    individuals would be responsible for -- for the
23    -- for maintaining the store locater.  Do you
24    know which personnel at Godfather's would be
25    responsible for that?
```

ROUGH DRAFT                                               13

1              MR. BARRY:  Objection, asked and

2    answered.  You can still answer the question.

3         A.   Could you repeat it?

4         Q.   Sure.  Earlier I asked you, you know,

5    if you knew the individuals at Godfather's that

6    were responsible for maintaining the operation of

7    the store locater.  Do you know which individuals

8    those are?

9              MR. BARRY:  Objection, foundation,

10   asked and answered.

11        Q.   You can still answer -- you can

12   answer the question.

13        A.   We don't maintain it.

14        Q.   You don't maintain it.

15        And whenever your counsel makes an

16   objection, he's just making an objection.  You

17   can still answer the question.

18        A.   Okay.

19        Q.   The topic 2 for the deposition notice

20   is:  The geographic location of your activities

21   related to the planning, design, development,

22   making, implementation, using, testing,

23   maintaining, supporting and offering the Accused

24   Instrumentalities.

25        Is it your understanding that you've been

1   designated by Godfather's to testify to its

2   knowledge of this topic?

3       A.   Yes.

4       Q.   And what's your basis for your

5   knowledge of this topic?

6       A.   Again, my position with the company.

7       Q.   And with topic 3 it states:  The

8   geographic location of your activities,

9   documents, servers, facilities, buildings,

10  personnel and other things related to your

11  accounting, financial records, SEC and/or tax

12  compliance, including the geographic location of

13  all sources of proof related to your finances.

14      Is it your understanding that you've been

15  designated by Godfather's to testify to its

16  knowledge of this topic?

17      A.   Yes.

18      Q.   And what is your basis of your

19  knowledge of this topic?

20      A.   My position with the company.

21      Q.   And topic 4:  Your control over any

22  third party personnel or Documents relating to

23  the planning, design, development, making,

24  implementation, using, testing, maintaining,

25  supporting and offering the Accused

ROUGH DRAFT                                                   15

```
 1    Instrumentalities.
 2         Is it your understanding that you've been
 3    designated by Godfather's to testify to its
 4    knowledge of this topic?
 5         A.   Yes.
 6         Q.   And, again, what is your basis of
 7    your knowledge of this topic?
 8         A.   My position with the company.
 9         Q.   And topic 5 of the deposition notice
10    is:  The factual assertions set forth in your
11    motion to transfer.
12         Is it your understanding that you've been
13    designated by Godfather's to testify to its
14    knowledge of this topic?
15         A.   Yes.
16         Q.   And what is your basis of your
17    knowledge of this topic?
18         A.   My position with the company.
19         Q.   And topic 6 is:  The location of all
20    sources of proof relating to any defenses you are
21    asserting in this litigation.
22         Is it your understanding that you've been
23    designated by Godfather's to testify to its
24    knowledge of this topic?
25         A.   Yes.
```

ROUGH DRAFT                                              16

1          Q.    And what is your basis for your
2     knowledge of this topic?
3          A.    My position with the company.
4          Q.    And topic --
5               MR. BARRY:   And let me just
6     interjection there, Mr. Ni.  Briefly, we had a
7     discussion before the deposition took place, it's
8     also Godfather's position with respect to topic
9     6, while it -- that the topic 6 is essentially
10    premature at this point in the case.  Initial
11    disclosures haven't even been served.  So to the
12    extent Godfather's Pizza, Inc., has information
13    on topic 6, it doesn't call for legal
14    conclusions, Mr. Roberts is designated.  But at
15    this point I don't think we're aware of any
16    information on topic 6 that is -- that is not a
17    legal conclusion or speculative within the
18    custody or control of Godfather's Pizza, Inc.
19               MR. NI:   Thanks.
20         Q.    Mr. Roberts, topic 7 states:   The
21    identity of any of your employees, operations,
22    facilities, Documents or ESI in the state of
23    Texas or the United States District Court for the
24    Eastern District of Texas.
25         Is it your understanding that you've been

ROUGH DRAFT                                          17

1    designated by Godfather's to testify to its

2    knowledge of this topic?

3         A.   Yes.

4         Q.   And, again, what is the basis of your

5    knowledge for this topic?

6         A.   Position with the company.

7         Q.   And topic 8 is:  The nature and

8    extent of business conduct by you in the Eastern

9    District of Texas.

10        Is it your understanding that you've been

11   designated by Godfather's to testify to its

12   knowledge of this topic?

13        A.   Yes.

14        Q.   And what is the basis of your

15   knowledge of this topic?

16        A.   Position with the company.

17        Q.   And finally topic 9 is:  The identity

18   and location of all persons knowledgeable about

19   the planning, design, development,

20   implementation, maintenance and support of the

21   Accused Instrumentalities and the subject matter

22   about which such employees are knowledgeable.

23        Is it your understanding that you've been

24   designated by Godfather's to testify to its

25   knowledge of this topic?

ROUGH DRAFT                                                    18

```
 1        A.   Yes.

 2        Q.   And what is the basis of your

 3   knowledge of this topic?

 4        A.   Position with the company.

 5             MR. BARRY:   And, Mr. Ni, just so

 6   that the record is clear, Exhibit 3, which I

 7   previously marked today, contains objections to

 8   -- general objections to the Rule 30(b)(6)

 9   deposition notice and also specific objections,

10   and those aren't being waived by virtue of

11   Mr. Roberts' designation as a witness or his

12   testimony today.

13             MR. NI:   Understood.

14        Q.   Mr. Roberts, where is Godfather's

15   corporate headquarters?

16        A.   2808 North 108th Street, Omaha,

17   Nebraska.

18        Q.   And how many employees are at that

19   location?

20        A.   60.

21        Q.   Are there any other corporate offices

22   for Godfather's?

23        A.   No.

24        Q.   So is this location the only office

25   for Godfather's other than their franchise
```

1   locations?

2          A.   Yes.

3               MR. BARRY:  Just so we have a clear

4   record here, you might want to ask him about --

5   is it -- you asked about an office, but we don't

6   want to hide the ball here, so you might want to

7   ask him about stores as well.

8          Q.   Mr. Roberts, in what states does

9   Godfather's conduct business?

10         A.   Okay.  Nebraska --

11              MR. BARRY:  Sorry.  And I object.

12  This is outside the scope of the deposition

13  notice.  You can answer, but it's outside the

14  scope of the notice.  If you have personal

15  knowledge, go ahead.

16         A.   Nebraska, Kansas, Minnesota, South

17  Dakota, Illinois, Missouri.  That's it.

18         Q.   Are there any Godfather's locations

19  in the state of Texas?

20              MR. BARRY:  Objection, form.

21         A.   You'll have to clarify that, I

22  mean --

23         Q.   Are there any Godfather's Pizza

24  stores in the state of Texas?

25         A.   Godfather's Pizza, Inc.?

ROUGH DRAFT                                                    20

1        Q.    Is -- what's your understanding of

2   Godfather's Pizza, Inc.?

3        A.    Corporate.

4        Q.    And what other divisions are there

5   besides the corporate of Godfather's Pizza, Inc.?

6             MR. BARRY:   Objection, form.

7        A.    There's Godfather's Pizza, Inc., is

8   the corporation, and there are corporate stores.

9        Q.    How many corporate stores are there?

10       A.    23.

11       Q.    How many total Godfather's Pizza

12   stores are there?

13             MR. BARRY:   Objection, form.

14       A.    Do you want -- is that --

15       Q.    I'm asking about corporate and

16   non-corporate stores?

17       A.    600.

18       Q.    What's the distinction between the

19   corporate and non-corporate stores?

20       A.    Non-corporate are franchised.

21       Q.    Earlier when you were stating the

22   states which Godfather's Pizza conduct business,

23   were you referring only to the corporate stores?

24       A.    Yes.

25       Q.    Are there Godfather's franchise

1    locations in the state of Texas?

2         A.   Yes.

3         Q.   Are there any Godfather's corporate

4    locations in the state of Texas?

5         A.   No.

6         Q.   Do you know if there are any

7    Godfather's Pizza franchise locations in the

8    Eastern District of Texas?

9              MR. BARRY:  Objection, form,

10   calls for a legal conclusion based on knowledge

11   of what the Eastern District of Texas is.

12             I'll make a representation --

13             MR. NI:  Let me clarify.  I believe

14   the only objections, because this deposition is

15   in the Eastern -- was noticed based in the

16   Eastern District of Texas.  This case is in the

17   Eastern District of Texas.  The only objections

18   you actually have are form or privilege.  So --

19             MR. BARRY:  I have a form objection

20   to the extent that your questions call for legal

21   conclusions.  Okay.  That's a valid form

22   objection, and I'm not trying to hide the ball

23   here, but Mr. Roberts isn't required to testify

24   -- to have knowledge of what counties in Texas

25   are in the Eastern District of Texas in order to

ROUGH DRAFT                                                          22

1    testify today.

2              We'll tell you, we've represented in his

3    Declaration already, there's one franchise

4    location within the Eastern District of Texas,

5    and he can tell you what that store is.

6              MR. NI:  No.  I understand the

7    clarification.  The point I'm making here is that

8    your objections are limited to form, and you're

9    not required -- you're not asked to provide the

10   basis for your form objection in the Eastern

11   District of Texas.  If you read the local rules,

12   it actually says that.

13             MR. BARRY:  And I'm not trying to

14   make an argumentative objection, but I do want to

15   be able to tell you what I think the problem is

16   so that we can work through it.

17             MR. NI:  I'm not talking about this

18   question.  I'm talking about some of the early

19   objections because in a way it's kind of coaching

20   the witness.

21        Q.   Mr. Roberts, I do understand what

22   your counsel is saying here, so let's just go to

23   Exhibit 2, which is your Declaration.  And

24   paragraph 5 states that:  Out of a total of

25   approximately 600 franchise locations, GPI

ROUGH DRAFT                                                    23

```
 1    currently has 11 franchise locations in the state

 2    of Texas, only one of which is located in the

 3    Eastern District of Texas.

 4         Do you know which location that's referring

 5    to?

 6         A.   I don't know the name, but I know

 7    there's one.

 8         Q.   Okay.  And do you know how long this

 9    location has existed?

10         A.   No.

11         Q.   Let's turn to the Godfather's

12    website.  Does Godfather's host its own website?

13         A.   Define host.

14         Q.   Does Godfather's -- strike that.

15         Are the servers that are used to store the

16    website located at Godfather's corporate

17    location?

18         A.   No.

19         Q.   Do you know where the servers are

20    located?

21         A.   I have never seen them, no.

22         Q.   So when you say you've never seen

23    them, you -- you don't know where the servers

24    that host the website are located?

25         A.   Definitively, no.  It's my
```

ROUGH DRAFT                                                    24

1    understanding they're in Omaha at Mid Comp.

2          Q.    And what is the basis of your

3    understanding?

4          A.    Discussion with Curtis.

5          Q.    Besides Mid Comp, do you know of

6    anyone else that has hosted Godfather's website?

7          A.    No.

8          Q.    Has Godfather's website been hosted

9    by Mid Comp for the past six years?

10         A.    Yes.

11         Q.    Is it your understanding that they're

12   hosted at Mid Comp's location here in Omaha?

13         A.    Yes.

14         Q.    Does Godfather's have a -- maintain a

15   -- sorry, strike strike that.

16         Does Godfather's maintain copy of the code

17   that's hosted by Mid Comp?

18         A.    A copy, yes.

19         Q.    Does -- strike that.

20         And you do not know if Godfather's has a

21   database used for store locater, correct?

22         A.    No.

23              MR. BARRY:  Objection.  Again, we're

24   outside the scope of the deposition notice.  That

25   answer is based on personal knowledge.

ROUGH DRAFT                                              25

1        Q.    Therefore, do you know if Godfather's

2    maintains a copy of the database -- a database

3    used for store location at --

4        A.    No.

5        Q.    -- in its corporate offices?

6             MR. BARRY:  Objection, form and

7    foundation.

8        A.    No.

9             MR. BARRY:  Within the form

10    objection is we're beyond the scope, among other

11    objections.

12             MR. NI:  I'm not sure how it's

13    beyond the scope.  I mean, the database is

14    related to what's being used and what's being

15    hosted, and the geographic location is part of

16    the --

17             MR. BARRY:  You're asking if

18    there is a database?

19             MR. NI:  Uh-huh.

20             MR. BARRY:  And that question is

21    beyond the scope of this deposition notice.  The

22    deposition notice doesn't ask about the

23    functionality of the Godfather's website.  It

24    asks about the geographic location, okay.

25             So to the extent that you're asking this

ROUGH DRAFT                                                  26

1    witness to assume that there is a database

2    associated with this website, it's beyond the

3    scope of the deposition notice.  And he's not

4    offering testimony on behalf of the corporation.

5              MR. NI:  I guess I disagree there.

6    We're just going to disagree because -- the

7    database is relevant because we're trying to

8    identify the location of all the documents, the

9    ESI, source code, database, whatever is used

10   related to the website.

11             MR. BARRY:  And he's told you that

12   whatever is used is located in Omaha.

13             MR. NI:  I don't think that was

14   actually the answer, but, sure.

15        Q.   Mr. Roberts, sorry, about that.  Just

16   to continue, do you know who designed Godfather's

17   website?

18        A.   I wasn't there, so, no.

19        Q.   Do you know if the individual that

20   designed Godfather's website, do you know where

21   they're located?

22        A.   No.

23        Q.   Do you know if the Godfather's

24   website was designed with input from Godfather's

25   employees?

ROUGH DRAFT                                              27

1          A.    I do not know.

2          Q.    Do you know if Godfather's maintains

3    metrics related to its website?

4               MR. BARRY:   Objection, beyond the

5    scope of the deposition notice, as were the prior

6    three questions.

7          A.    No.

8          Q.    Do you know if Godfather's stores any

9    metric information related to its website at its

10   corporate location?

11         A.    No.

12         Q.    Do you know if Godfather's maintains

13   any design documents or flow diagrams for its

14   website at its corporate location?

15         A.    No.

16         Q.    Do you know what types of documents

17   related to the website are kept at the -- at

18   Godfather's corporate location?

19         A.    The contract.

20         Q.    And who is Midland Computer?

21         A.    They are the company that designed

22   the web page.

23         Q.    Do you know where Midland Computer is

24   located?

25         A.    In Omaha.

```
 1          Q.   Do you know if Godfather's maintains
 2    copies of any of the documentation or design
 3    provided by Midland Computer?
 4          A.   No.
 5          Q.   Do you know who Mid Comp Web is?
 6          A.   Yes.
 7          Q.   And who is Mid Comp Web?
 8          A.   They store the web on their server.
 9          Q.   When you say they store the web on
10    their server, you're referring to that they store
11    the website on their servers?
12          A.   Yes.
13          Q.   And do you know where Mid Comp Web is
14    located?
15          A.   Omaha.
16          Q.   Do you know if Mid Comp Web has any
17    locations outside of Omaha?
18          A.   No.
19          Q.   Do you know who at Mid Comp Web is
20    responsible for maintaining the servers for
21    hosting the website?
22          A.   No.
23          Q.   Do you know if Mid Comp Web provides
24    Godfather's with copies of what's being stored on
25    their servers?
```

ROUGH DRAFT                                            29

```
 1          A.   No.

 2          Q.   Have you heard of Web Solutions,

 3   Omaha?

 4          A.   No.

 5          Q.   Do you know the types of financial

 6   documents stored by -- I'm sorry, strike that.

 7          Do you know the types of financial documents

 8   kept by Godfather's at its corporate location?

 9          A.   Yes.

10          Q.   And what type of financial documents

11   does Godfather's keep?

12          A.   Financial statements, invoices,

13   cancelled checks, contracts.

14          Q.   And are these documents physical or

15   electronic?

16          A.   Both.

17          Q.   Do you know if Godfather's maintains

18   documents that track the amount of orders

19   on-line?

20          A.   No.

21          Q.   Mr. Roberts, are you aware that in

22   this case that Godfather's has alleged the patent

23   asserted is invalid?

24          A.   Yes.

25          Q.   And have you ever heard of the term
```

ROUGH DRAFT                                              30

1    prior art?

2          A.    I've heard the term.

3          Q.    Do you know if any of the sources of

4    prior art that is allegedly invalidates the

5    patent is located in Nebraska?

6          A.    Rephrase that.

7          Q.    Do you know any of the -- if any --

8    strike that.

9          Do you know if any of the prior art that

10   would invalidate the patent is located in

11   Nebraska?

12             MR. BARRY:  Objection, form.

13         A.    Define prior art.

14         Q.    Earlier you said you've heard of the

15   term prior art.  What's your definition of prior

16   art?

17         A.    I've just heard the term.

18         Q.    Do you have an understanding of what

19   prior art means?

20         A.    No.

21         Q.    If I tell you that prior art is any

22   sort of earlier documentation or invention that

23   precedes a patent which could invalidate that

24   patent, do you know what that means?

25         A.    Yes.

ROUGH DRAFT                                              31

1          Q.   And do you know if any of the prior

2     art that allegedly invalidates the asserted

3     patent is located in Nebraska?

4               MR. BARRY:  Objection, form.

5          A.   No.

6          Q.   And do you know if any witnesses

7     related to any of the prior art are located in

8     Nebraska?

9               MR. BARRY:  Objection, form.

10         A.   No.

11         Q.   Are you aware that Godfather's has

12    asserted a defense of waiver?

13         A.   No.

14         Q.   And are you aware that Godfather's

15    has asserted a defense of laches?

16         A.   No.

17         Q.   And are you aware that Godfather's

18    has asserted a defense of estoppel?

19         A.   No.

20               MR. BARRY:  And -- are you done with

21    that line of questioning?

22               MR. NI:  Yeah.

23               MR. BARRY:  And to reiterate

24    objections interposed earlier to the questions

25    concerning Godfather's affirmative defenses,

ROUGH DRAFT                                              32

1    those questions call for legal conclusions that

2    are not available at this time because this case

3    is in the infancy of the discovery stages.

4    Godfather's Pizza Inc. has not even been provided

5    with the initial disclosures of GeoTag, Inc., and

6    so any testimony of Godfather's Pizza would not

7    only be a legal conclusion, it would be

8    speculative at this point in time on those

9    topics.

10             MR. NI:  Okay.  I guess the only

11   thing I wanted to add was, obviously, pleading a

12   certain defense, you have to have a basis for

13   your defense.  So our understanding was that

14   Godfather had an understanding to, you know, why

15   they would have pled those defenses.

16        Q.   Other than documents for finance --

17   financial documents, what other sort of documents

18   are kept at the corporate headquarters for

19   Godfather's?

20        A.   Specifically what are you --

21        Q.   Are there any other documents related

22   to the Godfather's website that are kept at the

23   corporate headquarters and not in the possession

24   of Midland Computer or Mid Comp Web?

25             MR. BARRY:  Objection, form.

ROUGH DRAFT                                                          33

1          A.    I'm sorry, but I still don't

2    understand the question.

3          Q.    Okay.  Does Godfather's corporate

4    location maintain any documents related to the

5    website?

6          A.    The contract.

7          Q.    So other than the contract,

8    Godfather's corporate location does not maintain

9    any other documents related to the website?

10              MR. BARRY:  Objection, form.

11         A.    Not to my knowledge.

12              MR. BARRY:  And beyond the scope of

13   the deposition notice.

14              MR. NI:  Can we take a short break.

15              MR. BARRY:  Sure.

16              (A short recess was taken from

17   10:24 a.m. to 10:27 a.m.)

18              (Deposition Exhibit 5 was marked for

19   identification.)

20   BY MR. NI:

21         Q.    Back on the record.  Mr. Roberts,

22   topic 4 in Exhibit 1 is related to your control

23   by any third-party personnel or documents related

24   to the planning, design, development, making,

25   implementation, using, testing, maintaining,

ROUGH DRAFT                                                  34

1    supporting and offering Accused

2    Instrumentalities.  Do you know what control the

3    Godfather's has over its providers for its

4    website?

5         A.   Yes.

6         Q.   And what control is that?

7         A.   Just what's in the contract.

8         Q.   Do you know if Godfather's IT directs

9    the design of the Godfather's website?

10        A.   They do not.

11        Q.   And do you know if Godfather's IT

12   directs the development of the Godfather's

13   website?

14             MR. BARRY:  Objection, form.

15        A.   No.

16        Q.   If you look at Section 3A.3 in what's

17   marked as Exhibit 5, the Website Development and

18   Services Agreement.  It's a section called Work

19   Product, and you can take your time to read the

20   section if you want, but my question is --

21   whenever -- after you finish reading it.

22        A.   Okay.

23        Q.   So based on your understanding of

24   this contract, does Godfather's maintain a copy

25   of all the source code and the web page

ROUGH DRAFT                                        35

1    development designs at its corporate location?

2                  MR. BARRY:  Objection, form.

3         A.   We have a copy of the source code.

4         Q.   Do you know if the developer has

5    provided Godfather's with anything other than a

6    copy of the source code?

7         A.   No.  I assume you're excluding the

8    contract.

9         Q.   Right, excluding the contract.

10                 MR. NI:  I don't have any further

11   questions.

12                 CROSS-EXAMINATION

13   BY MR. BARRY:

14        Q.   Mr. Roberts, if the developer had

15   provided Godfather's Pizza, Inc., with documents

16   related to the website, other than the source

17   code and the contract itself, where are those

18   documents stored?

19        A.   Omaha, Nebraska.

20        Q.   At Godfather's corporate location?

21        A.   Yes.

22        Q.   And to the extent that Godfather's

23   Pizza, Inc., has any other documents related to

24   the website, where are those documents kept?

25        A.   Omaha, Nebraska.

ROUGH DRAFT                                                      36

```
 1          Q.    At Godfather's corporate location?
 2          A.    Godfather's corporate location.
 3          Q.    I want to ask you just a couple of
 4    questions about the relationship between Midland
 5    Computer -- about your understanding of the
 6    relationship between Midland Computer and Mid
 7    Comp Web.
 8          Exhibit 5 is a contract entered into between
 9    Godfather's Pizza, Inc., and Midland Computer; is
10    that right?
11          A.    Yes.
12          Q.    And at some point, as you indicated
13    in your deposition, the web site become hosted by
14    Mid Comp Web; is that correct?
15          A.    Yes.
16          Q.    What's your understanding of the
17    relationship between Midland Computer and Mid
18    Comp Web?
19          A.    Midland sold to Mid Comp.
20          Q.    And both of those entities are
21    located in Omaha, Nebraska?
22          A.    Yes.
23          Q.    And Mr. Ni had asked you a question
24    about Web Solutions, Omaha.  I'd like you to take
25    look at your Declaration in this case.  Do you
```

ROUGH DRAFT                                                     37

1   have a copy of your Declaration in front of you?

2        Exhibit 2, do you have that in front of you

3   now, Mr. Roberts?

4        A.   Yes.

5        Q.   I'd like you to look at Exhibit -- or

6   paragraph 7 of Exhibit 2.  Just read that and

7   tell me when you've had a chance to finish

8   reading paragraph 7.

9        A.   Okay.

10        Q.   Does reading paragraph 7 refresh your

11   recollection as to the identity of Web Solutions

12   Omaha?

13        A.   Yes.

14        Q.   What is Web Solutions, Omaha?

15        A.   That's the d/b/a for Mid Comp.

16        Q.   Does Godfather's Pizza, Inc., have a

17   franchise location in Lake Dallas, Texas?

18        A.   Yes.

19        Q.   Are you aware of any other franchise

20   locations that Godfather's Pizza, Inc., has

21   within the Eastern District of Texas?

22        A.   None.

23            MR. NI:  Objection.  Again, same

24   objection you had earlier.

25        Q.   Mr. Roberts, you testified earlier

ROUGH DRAFT                                             38

1    that the Godfather's employees responsible for

2    the website are located in Omaha, Nebraska,

3    correct?

4          A.   Yes.

5          Q.   And that Godfather's first learned of

6    this lawsuit when it received notice of the

7    lawsuit, correct?

8          A.   That's correct.

9          Q.   When did Godfather's Pizza first

10   receive notice of the patent at issue in the

11   lawsuit?

12         A.   Shortly thereafter, if I recall.

13         Q.   At or about the time that it was sued

14   by GeoTag?

15         A.   Yes.

16         Q.   To the extent employees of

17   Godfather's Pizza were making business decisions

18   related to the website, prior to receiving notice

19   of the patent, where would those -- where would

20   those employees have been located?

21         A.   Omaha --

22              MR. NI:  Objection, form.

23         A.   Omaha, Nebraska.

24         Q.   As you sit here today, is Godfather's

25   Pizza aware of any witnesses it would expect to

ROUGH DRAFT                                                    39

1    call in the lawsuit who are located in the state

2    of Texas?

3         A.    No --

4              MR. NI:  Objection, form.

5         A.    No one.

6         Q.    And is Godfather's Pizza, Inc., aware

7    of any witnesses it would expect to call in the

8    lawsuit who are located -- well, I don't need to

9    ask that question.

10             MR. BARRY:  I have no further

11   questions.

12                  REDIRECT EXAMINATION

13   BY MR. NI:

14        Q.    Okay.  I just wanted to follow up on

15   two questions your attorney asked you related to

16   the -- any other documentation related to the

17   website provided to Godfather's.  You earlier

18   testified you weren't aware of any other

19   documents related to the website provided to

20   Godfather's other than the contract and source

21   code, correct?

22        A.    Correct.

23             MR. BARRY:  Objection, form.

24             MR. NI:  Okay.  No further

25   questions.

ROUGH DRAFT                                                40

```
 1              MR. BARRY:  And then one more
 2    question.
 3                    RECROSS-EXAMINATION
 4    BY MR. BARRY:
 5         Q.   To the extent there are other
 6    documents related to the website, other than the
 7    contract and source code, where do those
 8    documents -- where are those documents kept?
 9              MR. NI:  Objection, form.
10              MR. BARRY:  Sorry.  Thanks.
11         Q.   To the extent Godfather's Pizza,
12    Inc., has documents other than source code -- or
13    other than a copy of the source code and the
14    contract related to the website, where are those
15    documents kept?
16              MR. NI:  Objection, form.
17         A.   Omaha, Nebraska.
18              MR. BARRY:  No further questions.
19              MR. NI:  That's it.
20              MR. BARRY:  Mr. Roberts, you have a
21    right to read and sign your deposition, and we'll
22    exercise that right.
23              (The deposition was concluded at the
24    hour of 10:39 a.m.)
25
```

ROUGH DRAFT                                                        41

```
 1                         J U R A T

 2

 3              I, STEVEN M. ROBERTS, do hereby state

 4      under oath that I have read the above and

 5      foregoing deposition in its entirety and that the

 6      same is a full, true, and correct transcription,

 7      with my noted corrections, if any, of my

 8      testimony so given at said time and place.

 9

10                         _____
                                (Deponent's signature)
11

12                         _____
                                     (Date)
13
        STATE OF NEBRASKA  )
14                         ) ss.
        COUNTY OF DOUGLAS  )
15

16              Subscribed and sworn to before me on

17      this _____ day of _____ , 2012.

18

19

20                         _____

21                         GENERAL NOTARY PUBLIC

22

23

24

25
                                              CLM
```

ROUGH DRAFT                                                      42

```
 1              - C E R T I F I C A T E -
 2    STATE OF NEBRASKA  )
                         ) ss.
 3    COUNTY OF DOUGLAS  )
 4            I, Caroline L. Miller, RPR, CSR, and
 5    General Notary Public in and for the State of
 6    Nebraska, do hereby certify that STEVEN M. ROBERTS
 7    was by me duly sworn to testify the truth, the
 8    whole truth, and nothing but the truth, and that
 9    the deposition by him as above set forth was
10    reduced to writing by me.
11            That the within and foregoing deposition
12    was taken by me at the time and place herein
13    specified and in accordance with the within
14    stipulations, the reading and signing of the
15    witness to his deposition having not been waived.
16            That I am not counsel, attorney, or
17    relative of either party or otherwise interested in
18    the event of this suit.
19            IN TESTIMONY WHEREOF, I have placed my
20    hand and notarial seal this NOWDAY day of NOWMONTH,
21    2012.
22            _____
23            GENERAL NOTARY PUBLIC
24
25
```

ROUGH DRAFT                                                        43

1    NOWMONTH NOWDAY, 2012

2    STEVEN M. ROBERTS
     15448 Seward Street
3    Omaha, Nebraska 68154

4    Dear Mr. Roberts:

5    You will recall on July 16, 2012, I took your
     deposition at 1125 South 103rd Street, Omaha,
6    Nebraska, dealing with the case of GeoTag, Inc.,
     v. Starbucks Corp., et al., docketed in the
7    United States District Court, Eastern District of
     Texas, Marshall Division.  Your signature on the
8    deposition was not waived.

9    A minuscript of the transcript is enclosed and is
     ready for your review.  I would appreciate it if
10   you would read, then sign the errata sheet and
     jurat page, and return all back to me in the
11   enclosed envelope as soon as possible.  Local
     practice allows a witness 30 days in which to
12   read and sign the transcript and return same to
     the reporter.
13
     As you read the minuscript, please note any
14   corrections you might have on the correction
     sheet enclosed with the minuscript giving the
15   page number, line number, and the reason for the
     correction to be made as so indicated on the
16   sheet.

17   After reading and noting any corrections on the
     sheet, please sign the jurat page and also the
18   correction sheet.  Please sign both pages in
     front of a Notary Public and then have the Notary
19   sign on the proper line.  Thank you for your
     cooperation in this matter.
20
                     Yours truly,
21
                     Caroline L. Miller
22
     cc:  Mr. Hao Ni
23

24

25

ROUGH DRAFT                                               44

1    DEPOSITION CORRECTIONS OF STEVEN M. ROBERTS

2    CASE:  GeoTag, Inc., v. Starbucks Corp., et al.
          Civil Action No. 2:10-CV-572-MHS
3
     PAGE     LINE                          REASON FOR
4    NO.       NO.      CORRECTION            CORRECTION

5           *         *                      *

6           *         *                      *

7           *         *                      *

8           *         *                      *

9           *         *                      *

10          *         *                      *

11          *         *                      *

12          *         *                      *

13          *         *                      *

14          *         *                      *

15          *         *                      *

16          *         *                      *

17          *         *                      *

18

19                          SIGNATURE OF WITNESS

20   STATE OF NEBRASKA)
                      ) ss
21   COUNTY OF DOUGLAS)

22        Subscribed and sworn to before me this
           day of                    , 2012.
23

24                     GENERAL NOTARY PUBLIC

25

                                              Page: 44

45

```
 1          IN THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF TEXAS
 2                   MARSHALL DIVISION

 3
   GeoTag, INC.,                  )  Case No.
 4                                )
            v.                    )  2:10-CV-572-
 5                                )  MHS
   STARBUCKS CORP., et al.        )
 6                                )

 7
            I, Caroline L. Miller, RPR, NE CCR, IA CSR,
 8  and General Notary Public, do hereby certify that
    I served as the Court Reporter at the deposition
 9  of STEVEN M. ROBERTS on July 16, 2012, at 1125
    South 103rd Street, Omaha, Nebraska, in which the
10  costs of reporting and transcribing the
    deposition were $       , and that such costs are
11  to be paid by counsel for the plaintiff.
            I further certify that the original and
12  copies were sent to:  Original and 1 copy to
    Mr. Hao Ni.
13          Dated this NOWDAY day of NOWMONTH, 2012.

14          Delivered: _____

15
                    _____
16                      GENERAL NOTARY PUBLIC
                      Caroline L. Miller, RPR, CSR
17

18

19

20

21

22

23

24

25
```