# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| GEOTAG, INC., | § § | |
| v. | § § | Case No. 2:10-CV-572-MHS-RSP |
| STARBUCKS CORP., ET AL. | § § | |

## REPORT AND RECOMMENDATION

Before the Court is Domino's Pizza, Inc.'s ("Domino's") Motion for Summary Judgment of Non-infringement Based on Lack of Dynamic Replication and Geographical Areas (Dkt. No. 736, filed May 16, 2014.)[1] For the reasons discussed below, the Court recommends GRANTING Domino's Motion.

## APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S.

---

[1] GeoTag filed a multi-page declaration of its infringement expert—Mr. Easttom—along with its Response. (Dkt. No. 763-8, filed June 9, 2014.) Domino's moved to strike Mr. Easttom's declaration as untimely expert opinion. (Dkt. No. 774, filed June 20, 2014.) While much of the substance of Mr. Easttom's declaration appears to be untimely opinion, for purposes of this Motion only, the Court treats Mr. Easttom's declaration as proper.

at 247-48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion at trial, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## BACKGROUND

The Parties to this Motion are Domino's Pizza, Inc. and GeoTag, Inc. Domino's and GeoTag dispute, among other issues, whether or not U.S. Patent No. 5,930,474 (the "'474 patent") is valid and infringed. GeoTag accuses, broadly speaking, the section of Domino's website that allows customers to find Domino's restaurant locations—what the Parties refer to as a "store locator."

Domino's argues that it should be granted summary judgment of non-infringement of the '474 patent on two different theories: 1) the accused features of Domino's website do not include the "dynamic replication" required by the claims;[2] and 2) the accused features of Domino's website do not include the "geographical areas" required by the claims.[3]

---

[2] Domino's argues that its "locators do not copy or inherit into any pre-existing geographical areas in the database at or near the time of search."

Both the "dynamic replication" (highlighted) and "geographical areas" (underlined in part) limitations are present in each of the asserted independent claims: 1, 20, and 31. These claims read as follows:

> **1.** A system which associates on-line information with geographic areas, said system comprising:
>
> a computer network wherein a plurality of computers have access to said computer network; and
>
> an organizer executing in said computer network, wherein said organizer is configured to receive search requests from any one of said plurality of computers, said organizer comprising:
>
> a database of information organized into a <u>hierarchy of geographical areas</u> wherein entries corresponding to each one of said <u>hierarchy of geographical areas</u> is <u>further organized into topics</u>; and
>
> a search engine in communication with said database, said search engine configured to search geographically and topically, said search engine further configured to elect one of said <u>hierarchy of geographical areas</u> prior to selection of a topic so as to provide a geographical search area wherein within said <u>hierarchy of geographical areas</u> at least one of said entries associated with a <u>broader geographical area</u> is ==dynamically replicated== into at least one <u>narrower geographical</u> area, <u>said search engine further configure to search said topics within said selected geographical search area</u>.
>
> **20.** A machine for locating information organized into geographically-based areas, said machine comprising:
>
> a database of information accessible by a computer, said database of information organized into a predetermined <u>hierarchy of geographical areas</u> comprising at least a <u>geographical area of relatively smaller expanse</u> and a <u>geographical area of relatively</u>

---

[3] Domino's argues that its system meets none of the following requirements of the "geographical areas" specified by the claims: "(1) are hierarchical; (2) are selectable as a 'geographical search area' and (3) contain entries that are organized to permit selected data to be retrieved according to one or more topics."

larger expanse, said area of larger expanse including a plurality of areas of smaller expanse and wherein entries corresponding to each of said hierarchy of geographical area is further organized into topics; and

a search engine executing in a computer and in communication with said database, said search engine configured to select at least one geographical area in said hierarchy of geographical areas so as to define a geographical search area wherein at least one of said entries in said geographical area of relatively larger expanse is dynamically replicated into at least one of said geographical areas of smaller expanse, said search engine further configured to search said topics within said geographical search area.

**31.** A method for locating on line information comprising the steps of:

organizing a database of on-line information into a plurality of geographical areas, said geographical areas having a plurality of entries associated therewith;

organizing said entries corresponding to said plurality of geographical areas into one or more topics;

directing a search engine executing in a computer to select one or more of said geographical areas so as to select a geographical search area;

dynamically replicating an entry from broader geographical area into said geographical search area; and

displaying said topics associated with said geographical search area.

The Court, in its Claim Construction Memorandum and Order (Dkt. No. 640, filed November 7, 2013), construed several relevant terms:

- The Court construed "dynamically replicated" to mean "automatically copied or inherited, within the database, at the time needed rather than at a time decided or established in advance." The Court clarified that "[a]lthough incidental delays may occur between a user requesting a search, the search being performed, and

the search results being provided to the user . . . the phrase "at the time needed" refers to the time of generating a response to a search request." (Claim Construction Order at 18.) The Court also stated that "the parties must abide by their apparent mutual understanding that "at the time needed" refers to a need that arises while generating a response to a search request." (Claim Construction Order at 19.)

- The Court construed "<u>hierarchy of geographical areas</u>" to mean: "an arrangement of related information or data, ordered from broader geographical areas to narrower geographical areas, wherein each area at least partially overlaps one or more of the other areas." The Court clarified that "the overlap requirement only attaches to the 'hierarchy,' which does not itself require that the claimed dynamic replication must occur between areas that overlap." (Claim Construction Order at 24.) The Court also found that "the 'narrower geographical area,' the 'broader geographical area,' and the 'geographical search area' are selected from among areas (within "a hierarchy of geographical areas") that exist in the database before the search request is received." (*Id.* at 26.)

- The Court construed "<u>geographical search area</u>" to mean "the particular selected geographical area within the database for which the associated data records in the database are to be searched."

- The Parties agreed that "database" should mean "a collection of information, or of data, that is organized to facilitate retrieval of selected information or data." (Claim Construction Order at 8.)

- The Court also found for Claim 1 that "[t]he plain language of Claim 1 thus demonstrates that the 'narrower geographical area,' the 'broader geographical area,' and the 'geographical search area' are selected from among areas (within 'a hierarchy of geographical areas') that exist in the database before the search request is received." (Claim Construction Order at 26.)

- The Court also found that Claim 31 contemplates a search and that "for Claim 31 as for the other claims, the parties must abide by their apparent mutual understanding that "at the time needed" refers to a need that arises while generating a response to a search request, as discussed above." (Claim Construction Order at 20.)

**DISCUSSION**

**1. Non-infringement of the "Dynamic Replication" Limitation**

The Parties do not dispute that Domino's store locator operates as follows: four nights each week,[4] Domino's populates three tables—one for every city/state, five-digit zip code, and nine-digit zip code in the United States—with one entry listing an arbitrary number of Domino's restaurants that it calculates are closest to that location—and these restaurants may be in different cities, zip codes, or states;[5] then, at some point, a user enters location information (e.g. city/state or a zip code);[6] if the location is a city/state, a lookup is performed on a table that has an entry for every city/state in the United States, and if the location is a zip code (or can be converted to a nine-digit zip code), a lookup is performed on a table that has an entry for every zip code in the

---

[4] (Mot. at 7-8; Resp. at 18; Reply at 1-2.)

[5] (Mot. at 7-8; Resp. at 18.)

[6] (Mot. at 9; Resp. at 9.)

United States;[7] the pre-established result (from the earlier table population) for that location (in the form of an entry listing, among other things, unique store identifiers) is then returned;[8] in displaying the results to the user, the details for each unique store identifier are retrieved from a Store Table.[9] The Parties agree that Domino's database contains a Store Table that contains a number of specific details for each restaurant: phone number, opening time, closing time, hours of operation, acceptable credit cards, street, city, and state.[10]

1. A    **Claim 1**

The Court has construed "dynamically replicated" to mean "automatically copied or inherited, within the database, at the time needed rather than at a time decided or established in advance." The claimed "dynamic replication" occurs in relation to the claimed "geographical areas," and, as a consequence, the Parties' arguments as to both limitations are often intertwined. As the Parties' arguments on "dynamic replication" concern the time of the search and "geographical areas," it is relevant that the Court's Claim Construction order found that "the 'narrower geographical area,' the 'broader geographical area,' and the 'geographical search area' are selected from among areas (within 'a hierarchy of geographical areas') that exist in the database before the search request is received."

The limitation of Claim 1 containing the dynamic replication limitation is as follows:

> a search engine in communication with said database, said search engine configured to search geographically and topically, said search engine further configured to elect one of said <u>hierarchy of geographical areas</u> prior to selection of a topic so as to provide a

---

[7] (Mot. at 8-9; Resp. at 8-9.)

[8] (Mot. at 9-10; Resp. at 9, 26.)

[9] (Mot. at 9; Resp. at 10-11, 26.)

[10] (Mot. at 9, 23; Resp. at 8.)

> geographical search area wherein within said <u>hierarchy of geographical areas</u> at least one of said entries associated with a <u>broader geographical area</u> is ==dynamically replicated== into at least one <u>narrower geographical</u> area, <u>said search engine further configure to search said topics within said selected geographical search area</u>.

The Parties agree that the "dynamic replication is satisfied for claim 1, so long as one entry associated with a broader geographical area is automatically copied within the database at the time of the search into one narrower geographic area." (Mot. at 12-13; Resp. at 15; Reply at 3 (emphasis removed).)

Domino's argues that the claimed "narrower geographical area" must exist prior to the search. (Mot. at 13.) Dominos argues that its locators do not copy into a "geographical area" at or near the time of search. (*Id.*) Domino's argues that Mr. Easttom's expert report only provides hypothetical theories as to infringement and provides no detailed evidence of infringement as to Domino's systems. (*Id.* at 14-19.)

GeoTag argues that the claimed "dynamic replication" occurs when "Domino's store locator makes at least one copy, and often more than one copy, within the database, at the time of the search." (*Id.*) GeoTag argues that such a copy is made when the results associated with a location are copied into a database memory buffer as part of the database's process of responding to the request. (*Id.* at 15-16.) GeoTag argues that Claim 1's "narrower geographical area" is the area submitted by the user. (Resp. at 16.) GeoTag argues that, "[a]t the time of the search, Domino's store locator copies entries associated with the narrower geographical search area— i.e., [a city]—as well as entries associated with a broader geographical area [e.g. surrounding cities]." (*Id.* at 16-17.) GeoTag argues that "Domino's database contains several geographical hierarchies, including, among others, a citystate hierarchy, a 5-digit zip code hierarchy, and 9-digit zip code hierarchy." (*Id.* at 18.)

Domino's replies that its system is what GeoTag has described as a "static list system"—which GeoTag admits does not practice dynamic replication—thus, by GeoTag's own argument Domino's does not infringe. (Reply at 2.) Domino's argues that by GeoTag's own argument there is no copying from a broader geographical area into a narrower geographical area at the time of search: Domino's only ever copies the entries already associated with a geographical area into the same geographical area. (*Id.* at 3.) Domino's argues that, while GeoTag points to the stores located in cities or zip codes outside of the searched areas, "the claims require that the 'broader geographical area' be part of the pre-existing 'geographical areas' from which a search area is selected." (*Id.* at 4.) Domino's argues that GeoTag's argument fails here on two points: 1) there is no defined and searchable "broader geographical area" and 2) under GeoTag's theories the entry for the "broader geographical area" and "narrower geographical area" are always the same. (*Id.* at 4.) Domino's argues that GeoTag's theory that the preselected results for each location are copied into a narrower geographic area in the database's memory cache fails: the narrower geographical area does not previously exist in the cache, and, if it did, results would not be copied into it. (*Id.* at 5) Domino's argues that another court found predetermined or pre-generated entries outside the scope of the '474 patent. (*Id.* (citing *GeoTag v. AT&T Mobility, LLC*, Case No. 3:13-CV-00169-K (N.D. Tex. June 10, 2014.) at pp. 40-41).)

The Court finds that GeoTag has not presented evidence establishing a genuine issue of material fact as to whether Domino's database contains broader or narrower geographic areas. GeoTag has presented evidence that Domino's database contains three distinct tables based on city and zip code, and that customer locations are matched to one (and only one) of the three tables. GeoTag's evidence fails to establish any genuine issue of material fact that Domino's database contains entries associated with a broader geographical area or entries associated with a

narrower geographical area. GeoTag's evidence, at best, establishes that in Domino's database there is only ever a single scope of geographical area—the specific location from the lists of cities or zip codes that has been searched—and that scope is never in relation to any other geographical area, much less one that is either smaller or larger. Said another way, considering how Domino's store locator actually functions, there is no evidence before the Court that Domino's store locator considers (or could consider) a location from one of its tables (e.g. city or zip code) in relation to any other location or area in Domino's database.

The Court finds that GeoTag has not presented evidence establishing a genuine dispute of material fact as to whether Domino's database copies one entry associated with a broader geographical area into a narrower one. GeoTag has presented evidence that Domino's database copies every result associated with a location into a cache before they are returned. GeoTag asserts that this cache is a narrower geographical area and that the results being copied comprise the broader geographical area within the claimed hierarchy of geographical areas. GeoTag's arguments fail for several reasons. GeoTag has not presented evidence to establish a genuine dispute of material fact that the cache is the claimed "geographical area," "narrower geographical area," or "geographical search area" or that the results, which are copied into the cache, are the claimed "broader geographical area." Viewed in a positive light, GeoTag's arguments are at best circular: the original location is the "narrower geographical area," (because GeoTag asserts it is) the results representing the "narrower geographical area" are copied into a cache, and when the results representing the "narrower geographical area" are copied into the cache, which also represents the "narrower geographical area," now, somehow, the results from a broader geographical area (because GeoTag asserts they are) have been copied into a narrower one. Viewed in a most favorable light, GeoTag's evidence only establishes that the location, its

associated results, and the cache are equivalents in Domino's database. Even if GeoTag had presented evidence establishing a genuine dispute that the cache is a claimed geographical area, GeoTag has not presented evidence establishing a genuine dispute of material fact that the cache (as a geographical area) exists before the search or that it is a "geographical search area" into which dynamic replication occurs, as required by the claims.

The Court therefore grants the portion of Domino's motion requesting summary judgment of non-infringement as to the dynamic replication limitation. For the purposes of this ruling, the Court assumes that Mr. Easttom's declaration is not improper opinion.

The Court does not reach the issues of whether Domino's system is a static list system or the ruling from the Northern District of Texas.

**1.B    Claim 20**

The Parties agree that the relevant analysis for Claim 20 is the same as that for Claim 1. The Court's ruling regarding this limitation is therefore governed by its ruling on Claim 1.

**1.C    Claim 31**

The Parties agree that the relevant analysis for Claim 31 is the same as that for Claim 1. The Court's ruling regarding this limitation is therefore governed by its ruling on Claim 1.

**2. Non-infringement of the "Geographical Areas" Limitation**

GeoTag argues that Domino's database has an entry "for every city in the United States, every 5 digit zip code in the United States, and every 9 digit zip code in the United States" and that "[t]hese geographical areas are arranged in the database so that they can be cross-referenced with Domino's restaurants located in relatively close proximity." (Resp. at 21.) While GeoTag admits that "[t]hese [city/state and zip code] entries are separate and apart from the restaurants entries kept in the same database," GeoTag argues that "these geographical areas are linked to the restaurants entries using unique restaurant keys." (*Id.*) GeoTag also argues that "Domino's

also keeps geographical areas in its Store Table, including such areas as city, state, county, and latitude and longitude." (*Id.* at 21-22.)

Domino's replies that its city/state and zip code lists are better thought of as labels than as geographical areas, since the entries they contain are not representative of the area commonly described by the city/state and zip code. (Mot. at 22.)

## 2.A   "hierarchy of geographical areas"

The Court has construed "hierarchy of geographical areas" to mean "an arrangement of related information or data, ordered from broader geographical areas to narrower geographical areas, wherein each area at least partially overlaps one or more of the other areas."

Domino's argues that its database is not "organized into geographical hierarchies": Domino's only has standalone tables organized by city/state or zip code that are not interlinked. (Mot. at 19.) Domino's argues GeoTag provides no evidence of infringement: Mr. Easttom's expert report "fails to offer any evidence from Mr. Easttom as to the structure or organization of the Domino's database; he never discusses it." (*Id.* at 21.) Domino's argues that Mr. Easttom only states that the "limitation is met because geographical data is 'inherently hierarchical.'" (*Id.*) Domino's argues that Mr. Easttom refers to physical geographical areas (e.g. states, counties, cities, zip codes), and that Domino's entries for cities and zip codes do not reflect their actual geographical area, because the entries only represent the nearest arbitrary number of stores to a location, which are almost always located in other cities, zip codes, and even states than the location. (*Id.* at 22.)

GeoTag responds that the "organized into geographical hierarchies" limitation is only found in claims 1 and 20. (Resp. at 22.) GeoTag argues that the city/state and zip code tables in Domino's database are linked to Domino's Store Table. (*Id.* at 22-24.) GeoTag argues that each entry in Domino's city/state and zip code tables is associated with a series of unique store

identifier and distance pairs (e.g. 1128 and 5.05, signifying that store 1128 is 5.05 miles from the center of a particular zip code). (*Id.* at 24.) GeoTag argues that "Domino's orders its geographical and topical data according to a series of circular, overlapping geographical areas that share the same center point, but have different radi[i]." (*Id.*)

Domino's replies that GeoTag offers no evidence that Domino's city/state or zip code tables are "ordered from broader geographical areas to narrower geographical areas" as required by the claims. (Reply at 6.) Domino's argues GeoTag provides no evidence that the city/state and zip code tables are "linked to one another through the Store Table." (*Id.* at 6-7.) Domino's argues that GeoTag is incorrect, and that "[d]istances cannot meet the claim requirement of geographical areas." (*Id.* at 7.) Domino's argues that, assuming arguendo, the distances might be a hierarchy, the fact that they are all in the same field shows they are not hierarchically organized according to Mr. Easttom's testimony. (*Id.*) Domino's further argues that, since the claims require the "geographical search area" be selected from the "hierarchy of geographical areas," and, in Domino's system the distances are never searched as a "geographical area," they cannot be what the claims require. (*Id.* at 7-8.)

The question before the Court is not whether the information in Domino's database could be arranged (e.g. reprogramed) to meet the required limitations. The question before the Court is whether there is a genuine dispute as to whether or not Domino's database, as it actually exists, is arranged such that it meets the required limitations. Mr. Easttom's opinion that Domino's database is "inherently hierarchical" is undermined by the lack of evidence supporting his conclusion.

GeoTag's theory that Domino's store locator contains a geographical hierarchy is as follows: each store becomes a circular geographical area (there is no evidence this occurs); the

size of this circle is the store's distance from the searched location (there is no evidence this occurs); each one of these store geographical areas is exactly centered over a searched location (there is no evidence this occurs); and such an arrangement creates the claimed hierarchy of geographical areas (there is no expert opinion that it does).[11] GeoTag's argument is, at best, completely unsupported by the record.[12] To the extent GeoTag is arguing that mere distance creates the required hierarchy, this is unsupported by the Court's claim construction. While it does not appear to be evident from the briefing, if GeoTag is arguing that the Domino's independent lists of zip codes or list of cities—by themselves—create the claimed hierarchy, this is also unsupported by the Court's construction. The Court therefore finds that GeoTag has not presented evidence establishing a genuine dispute of material fact that Domino's database is organized into geographical hierarchies.

GeoTag argues that Domino's city and zip code tables are linked to Domino's Store Table. Assuming arguendo GeoTag is correct, GeoTag fails to provide evidence that (or explain how) the relationship between the city and zip code tables and the Store Table would create the required hierarchy.

GeoTag argues that Claim 31 does not contain the claimed "hierarchy of geographical areas" or teach that limitation. The Court has previously found that Claim 31 does not require a hierarchy. (Claim Construction Order at n.6.) Claim 31 does clearly require that there be a "broader geographical area" in reference to an arbitrarily selected "geographical area." As

---

[11] GeoTag's explanation does not state whether (or how) the area represented by the zip code or city would fit into this series of circular areas aligned over a point representing the center of the zip code or city.

[12] GeoTag's argument that such circles are the hierarchy of geographical areas also appears to run counter to the rest of its Response, which argues zip codes and cities are the claimed geographical areas.

discussed in this Order, GeoTag has not shown that Domino's database contains the claimed "broader geographical area."

The Court therefore grants the portion of Domino's motion requesting summary judgment of non-infringement as to this geographical areas limitation. For the purposes of this ruling, the Court assumes that Mr. Easttom's declaration is not improper opinion.

## 2.B "geographical search area"

The Court has construed "geographical search area" to mean "the particular selected geographical area within the database for which the associated data records in the database are to be searched."

Domino's argues that it "does not pick one geographical area out of the plurality of geographical areas and then search that area." (Mot. at 25.) Domino's argues that there is only the retrieval of all information associated with a given city or zip code. (*Id.*)

GeoTag argues that by selecting one city/state or zip code location (out of a list of all such locations) Dominoes is picking one geographical area out of a plurality of geographical areas and searching that area. (Resp. at 25.) GeoTag also argues that "[t]he fact that Domino's associates some restaurants with a particular geographical area even though they may be located slightly outside the geographical area makes no meaningful difference." (*Id.* at 25-26.)

Domino's replies that "geographical search area" was construed to mean "the particular selected geographical area within the database for which the associated data records in the database are to be searched." (Reply at 8.) Domino's argues that "the claim construction requires multiple 'associated data records' that are 'to be searched' . . ." and that in Domino's system there is only a lookup of a list of static results. (*Id.* at 8-9.)

The Parties presented relatively little argument on this limitation.[13] The record does not appear to be clear on whether or not the results associated with one of the city or zip code locations in Domino's database are ever searched. The Parties do appear to discuss "search" in the context of the overall search locator or in the search locator's identification of city or zip code, but the record is unclear as to whether the associated results are searched.

As such the Court finds that Domino's has not carried its burden as to whether there is a claimed "search" of the alleged "geographical search area." This conclusion does not change the Court's other recommendations on dynamic replication or the other geographical areas limitations.

**2.C  Topics limitations**

For Claim 31, the Court construed "organizing said entries corresponding to said plurality of geographical areas into one or more topics" as "organizing said entries corresponding to one or more geographical areas to further permit selected data to be retrieved according to one or more topics."

Domino's argues that its "entries are not organized to 'permit selected data to be retrieved' according to any topics." (Mot. at 27.) Domino's argues that it has no topics that the user can search for, and that the same information is provided for each store each time. (*Id.* at 28.)

GeoTag argues that, using the unique store keys associated with a given city/state or zip code, Domino's store locator then submits a second search directed to the Store Table to retrieve all of the topical data related to the restaurants associated with the geographical search area. (Resp. at 26.)

---

[13] Domino's Motion presents about one and a half pages, GeoTag's Response presents a page, and Domino's Reply presents something less than one page.

Domino's replies that GeoTag provides no information that Domino's city/state and zip code tables contain entries that are organized by topic. (Reply at 9.) Domino's argues that GeoTag's depiction of its Store Table is misleading and that its actual store table contains only one textual field, which is not searchable. (*Id.*) Domino's argues that it "therefore has no entries 'organized to further permit selected data to be retrieved according to one or more topics.'" (*Id.*)

The Parties presented relatively little argument on this limitation.[14] The Parties do not dispute that Domino's Store Table contains information that they would otherwise agree is topical (e.g. store hours, street address, accepted currencies) The Parties do not appear to dispute that, in Domino's Store Table, all of this information is contained in a single entry for each store. The Parties do not appear to dispute that when Domino's retrieves information from the Store Table all of the information contained in the entry is retrieved and information is never retrieved separately. The Parties do not appear to dispute that Domino's does not provide the ability to search separately for any particular information in the Store Table (e.g. store hours).

The Court finds that GeoTag has not presented a genuine dispute of material fact that Domino's database contains entries that are organized to permit data to be retrieved according to topics or that Domino's database is organized according to topics. The Court finds no evidence that Domino's database is structured to meet the claimed "to further permit selected data to be retrieved according to one or more topics" limitation.

The Court therefore should grant the portion of Domino's motion requesting summary judgment of non-infringement as to this geographical areas limitation. For the purposes of this ruling, the Court assumes that Mr. Easttom's declaration is not improper opinion.

---

[14] Domino's Motion presents about three pages, GeoTag's Response presents a half a page, and Domino's Reply presents about one page.

### 3. Domino's Store-Locator Prior to 2010

Domino's argues that no evidence of infringement has been provided for its systems prior to 2010. (Mot. at 29-30.)

GeoTag does not dispute that it did not review Domino's source code prior to 2010. GeoTag argues that Domino's expert "testified during his deposition that source code is not necessary to prove infringement, so long as the plaintiff has access to other reliable evidence" and that "a fact issue exists that precludes summary judgment." (Resp. at 27.)

Domino's argues that GeoTag does not attempt to offer evidence regarding Domino's systems before 2010.

GeoTag has provided no evidence to create a genuine dispute of material fact as to Domino's systems prior to 2010. The Court therefore should grant the portion of Domino's motion requesting summary judgment of non-infringement as to its systems prior to 2010.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Domino's Pizza, Inc.'s Motion for Summary Judgment of Non-infringement Based on a Lack of Dynamic Replication and Geographical Areas (Dkt. No. 736) be **GRANTED**. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions

accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 5th day of August, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE